## MOST v. FREDERICK LOESER & CO., Inc.
### No. 7510.

District Court, E. D. New York.
May 22, 1936.

Hoguet, Neary & Campbell, of New York City (Worthington Campbell and Mark Donohue, both of New York City, of counsel), for plaintiff.

Hyland R. Johns, of New York City, for defendant.

CAMPBELL, District Judge.

This is a suit for the alleged infringement of patent No. 1,824,029 issued to Lucifer J. Most and Ralph W. Wilson for container granted September 22, 1931, on an application filed May 9, 1928.

The interest of Ralph W. Wilson was assigned to the plaintiff who has title to the letters patent in suit. No notice of infringement was given to the defendant before the commencement of this suit.

The defendant is only a dealer and this suit is defended by the manufacturer of the alleged infringing device, Majestic Metal Specialties, Inc.

The device complained of is in evidence by stipulation.

This suit is based only on claim 3 of the patent in suit.

The defendant has interposed an answer raising the issue of invalidity and noninfringement.

The device in issue is known in the trade as an "automatic" lipstick container.

The patentees in their specification say: "Our invention relates to containers suitable for cosmetics or other material capable of being fed forth and back, such for example, as lipstick or similar articles, and it is characterized by a container provided with a cover which opens automatically when the material is fed out of the container and closes when the material is retracted. Another object of the invention is to provide a container which has few parts, is simple in construction and will not get out of order."

They further say: "In the appended drawings the container is illustrated

for the use of a lipstick but the same may be used for soap or any other suitable material that may be fed in and out of the container."

A lipstick is consumable and is consumed during use. So is soap. Material that is "similar" to lipstick or soap, as contemplated by the patent, is material that is consumed during use. The primary problem in providing a satisfactory "automatic" container was the difficulty presented by its consumable nature, and there were other secondary factors peculiar to the handling of such material.

The following characteristics and construction are peculiar to practical "automatic" containers for lipsticks:

1. Smallness for convenience in carrying.

2. Maximum amount of lipstick material.

3. Means for feeding the lipstick material to exposed position for use.

4. A carrier within the container of minimum length so that the lipstick within the container may be of maximum length.

5. A support for the frangible lipstick when in use adjacent its exposed end.

6. Complete inclosure of the lipstick for protection when not in use.

7. A common actuator for the carrier and for the door of the container.

8. A door opening mechanism which will move the door a predetermined distance only, which is that distance sufficient to open the container for free movement of the lipstick without interference.

9. A carrier which is movable a variable distance so that the lipstick may be exposed for use as its length is reduced during use.

The construction of the patent will satisfy these requirements.

The patent discloses a structure including two separate mechanisms operable in timed relationship, by a single common actuator. The two mechanisms being (a) the feed for moving the carrier a variable distance and (b) the door opening device. The specification says, "The outward feed of the material and the opening of the cover are concomitant, the carrier and cover opener are both moved longitudinally for the first quarter of their revolution."

It then says, "For the remaining part of their revolution, the only longitudinally movable part is the carrier. * * *"

It further says, "When the pencil is to be retracted the carrier is revolved in the proper direction and for the first three-quarter of a revolution of the carrier the only longitudinal movement is imparted to the carrier and for the last quarter of the revolution, both the carrier and the cover are moved longitudinally. * * *" This permits the doors to close.

In the specific embodiment of the patent the following mechanism comprises the variable feed for the carrier, the common actuator is the rotatable tube 15 which is operated by the finger piece 23 secured thereto. The carrier 10 for the lipstick is slidably mounted within the actuator tube 15 and engaged with a longitudinal slot 14 therein by means of a pin 13. The actuator tube 15 is nested within a second tube 19 which is fixed against rotation within the case 26. The tube 19 is provided with a helical slot 20, into which extends the pin 13 of the carrier 10. Rotation of the actuator tube 15 by means of the finger piece 23 causes the carrier to rotate because the pin extends through the longitudinal slot 14. At the same time, the carrier is caused to move longitudinally because of the engagement of its pin with the helical slot in the relatively fixed tube 19. This longitudinal travel of the carrier is variable, its extent being limited only by the length of the helical slot 20.

The following mechanism comprises the door opening device. A longitudinally slidable tube 18 whose movements outwardly and inwardly are caused by the same actuator tube 15. The door opening tube 18 is nested on the fixed tube 19, and has a pin 17, which extends through a helical slot 21 in the tube 19. The pin 17 also extends into a longitudinal slot 16 in the actuator tube 15. Rotation of the actuator causes longitudinal movement of the door opening tube 18 in the way movement of the carrier 10 is caused. The actuator being common, the initial movement of the carrier and the door opener are necessarily concomitant. Once the doors 27 are opened to an extent sufficient to permit unimpeded movement of the lipstick, it is unnecessary that the doors be moved further. The door opening device is inten-

tionally caused to dwell; continued operation of the actuator will not and cannot cause further movement of the door opener. If this condition were not established, the movement of the carrier would be limited by the permitted movement of the doors. But as the material in containers of this character is progressively reduced in length, its travel must be variable and must be continued until substantially all is consumed.

The helical slot 20 for the carrier has a full convolution on the tube 19 while the helical slot 21 for the door opener has only a quarter of a convolution, and the slot 21 merges into a circular slot 22 which continues for three quarters of the circumference of the tubular member 19.

The operation is described in the patent specification as follows:

"By rotating the head 23 while holding the outer shell 26, the carrier 10 is forced by the helical slot 20 to rise. Simultaneously, the cover opener 18 is also forced to rise due to the engagement of its pin 17 with the slot of the helix 21, but after a quarter of a revolution of the actuator, the cover opener will enter the circular slot and thereafter will not move longitudinally while the carrier will continue to rise through the other three-quarter revolutions of the actuator. See Figure 3 and dash and dot outline in Figure 1.

"The first quarter revolution of the actuator is sufficient to open the covers 27 and thus provide an unobstructed passage for the cosmetic pencil secured to the carrier. In the drawings, the pitch of the helixes 20 and 21 are identical but do not have to be such. When the pencil is to be retracted the carrier is revolved in the proper direction and for the first three-quarter of a revolution of the carrier the only longitudinal movement is imparted to the carrier and for the last quarter of the revolution, both the carrier and the cover are moved longitudinally and therefore the springs 28 of the covers are free to bring the covers to their normal closed position.

"From the above, it will be seen that in our container, the outward feed of the material and the opening of the cover are concomitant, the carrier and cover opener are both moved longitudinally for the first quarter of their revolution. For the remaining part of their revolution, the only longitudinally movable part is the carrier, the cover opener remaining in its extended position until its pin 17 is brought back in the engagement with its helical slot 21 on the retracting movement of the actuator."

Rotary and sliding actuators were used in lipstick containers of the nonautomatic type prior to the earliest date of invention claimed for the patent in suit.

These types of actuators had been used interchangeably in lipstick containers and in the mechanical pencil field.

The rotary type of actuator which was accepted by the better trade is illustrated in the drawings of the patent. The slide type was associated with the cheaper trade.

Plaintiff's exhibit 16 is an illustrative model showing essentially the same relationship of parts disclosed in the patent, but with a slide type actuator. As explained by Most, this embodiment involved merely a reversal of parts whereby instead of rotating a tube to cause a pin to travel longitudinally, by sliding the pin longitudinally the tube is caused to rotate, and all of the other results particularly described, flow from the reversal.

The defendant contends that "the specification does not indicate what is the means referring to the recital in claim 3." Understanding this statement as meaning that the specification does not set forth a formal definition of the word "means" with a particularization of the elements embraced within such a definition, defendant's argument suggests that in the absence of such a formal definition the word "means" may never properly be recited in a claim. The contention as thus understood is not sustained. The cases cited on behalf of defendant in support of such suggestion are not in point because they merely have to do with instances where there is an absence of description in the specification of the elements comprising "means," whereas in the specification of the patent in suit there is a full and detailed description of the means by which the actuator is connected operatively with the door opener tube.

Defendant errs in the suggestion that the question presented here is of the patentability of a new use.

Plaintiff contends that the structures disclosed by the prior art are not pertinent to the container in issue for the

4

reason that they are not adapted for practical use with a consumable material. Claim 3 in issue specifically refers to material which from the disclosure of the specification I am convinced means consumable material such as lipstick and soap. For that reason, provision was made by the patentees for a structural relationship of parts to meet the practical requirements of use and to that structure the claim is addressed.

The striking point of departure from the prior art is in providing means independent of the carrier to connect the actuator operatively with the door opener because in a practical lipstick container the travel of the carrier cannot be limited in extent to the initial travel of the material since the material is consumed in use.

Defendant has offered in evidence a large number of alleged prior art patents, but I see no necessity for specifically considering any of such patents except the United States patents to Schreiber No. 1,059,398 dated April 22, 1913, the Italian patent No. 244,248 to Italian Fountain Pen Manufacturing Company patented January 28, 1926, and United States patent to Kasdan 1,675,496 dated July 3, 1928. The defendant offered in evidence models (Exhibits H and O) purporting to illustrate the constructions of the two first-mentioned patents, both of which were pleaded as anticipations.

United States patent No. 1,059,398 issued to Philip J. Schreiber for Fountain-Pen Cap granted April 22, 1913, discloses no actuator apart from the other elements. The pen barrel 1 can be moved with relation to the cap. The pen barrel 1 is the carrier for the pen nib 3. The pen nib 3 is moved by pushing the barrel. The barrel is longer than the cap. The pen nib is shorter than the barrel. The pen barrel actuates the door opener by means of the pin 13 whose movement is necessarily equal in extent to the movement of the barrel and to the movement of the pen nib. This patent seems to be disposed of by the testimony of Kasdan that a lipstick would not be made like that because it would be entirely too long and even if it was shortened by making it operate by a sliding button (which would involve a radical modification in principle) it would not be satisfactory as a lipstick holder.

There is a marked dissimilarity between Schreiber and the patent in suit in that in Schreiber if the barrel (assumed to be a "carrier") is removed, the door opener is left without operating means, whereas in the patented device and in the defendant's device the carrier can be removed, without disturbing or modifying the relationship between the actuator and the door opener. The door opening mechanism is wholly independent of the carrier. As I have interpreted claim 3, it cannot be read on Schreiber. To do so literally, Schreiber's pen barrel must be read as the "carrier" and also as "means engaging the actuator to the cover" even though it is a single element, whereas the two elements recited are mutually exclusive as the claim indicates. These two elements are recited affirmatively in the claim and the disclosure makes clear that the "means" are independent of the carrier. That patent does not anticipate.

Italian patent No. 244,248 issued to Italian Fountain Pen Manufacturing Company for Fountain Pen with Re-Entrant Pen & Automatic Closure Patented January 28, 1926. In this patent there is a container within which is inclosed the pen barrel and pen. There is really no container in Schreiber. In this Italian patent there is no container for a carrier for "material" as recited in claim 3. The barrel carries a pen nib which is movable to its fixed predetermined writing position. Force applied to the button 4 is impressed on the pen barrel. The barrel when moved actuates the doors 8. These doors close an opening which can be no greater than half the size of the bore of the container, because the construction and mode of operation of the doors permit them to close an opening equal only to half the area of a circle. From this it appears that any "material" could be only one-half the area of the bore of the container and that would preclude the use of the container for lipstick. A pin 11 on the barrel is in constant engagement with the tubes carrying the doors; hence it is the barrel that brings about the opening of the doors and maintains them in opened position. That patent is not dealing with lipstick material, but with a rigid unit, such as a pen nib, whose movement is of predetermined extent. The opening in the container can be closed by the doors only to the extent of 180°, they are opened by

the pin on the barrel and held open by it and the pen nib has only a predetermined travel into normal writing position. The pen barrel itself would have to be regarded as both "carrier" and "means." In the patent in suit the elements are mutually exclusive being recited affirmatively in the claim. The means of the patent in suit are independent of the "carrier." The defendant avails itself of the advantages of the claim and does not use its "carrier" as the actuating member because the resulting structure would not be practical. That patent does not anticipate.

United States patent No. 1,675,496 issued to Nathan Kasdan and Daniel Pollack, assignors to Majestic Metal Specialties, Inc., for Cosmetic-Stick Holder granted July 3, 1928. Defendant says this patent illustrates an "automatic" lipstick container because the carrier may be moved by the pressure of the thumb of one hand. This device is not automatic in the sense used by Wilson and Most. It does not perform the function of the patented container, nor those of the device complained of. It was an expedient to tie the cap to the carrier so that the cap would not have to be handled separately and could not be dropped or lost. Kasdan sought to make one hand operation a criterion of what is automatic, but called semiautomatic the device of the patent to Mayer No. 1,693,151, the specification of which states that the object is to produce a device for opening and closing the container "by the manipulation of one hand." The Mayer device is no less automatic than that shown in Kasdan patent No. 1,675,496.

In principle, these containers do not differ from U. S. patent to Herzstam No. 947,198 January 18, 1910, and French patent to Guerlain No. 601,605 cited as references by the Examiner. In both of which patents the cover and carrier are positively interconnected, so that the movement of one is accompanied by movement of the other, and to the same extent.

The Schreiber patent No. 1,059,398 is the defendant's best reference, but as I have found it fails to support the defendant's contentions, and therefore the other patents set forth in the defendant's brief, but not discussed particularly, fail because they lack the elements which Schreiber lacks and others in most instances.

Lipstick containers have been sold since 1915, and there were efforts made to bring the cap into physical association with the carrier which, compared with the full automatic type of container of the patent in suit, are to be regarded as "unsuccessful" if they are to be taken as efforts to provide containers which would serve to some extent the purpose of the container of the patent in suit.

I do not agree with defendant's contention that the patent in suit has not been marketed. I am convinced that the Hudnut devices sold under the patent in suit in 1931 embodied the basic principles of the patent in suit. No full automatic container having the characteristics of the patent in suit was on the market prior to May 9, 1928, the application date, or prior to the appearance of the Hudnut device in 1931.

If the problems which confronted the patentees were as simple and obvious as now contended, why did it escape Kasdan? The answer is plain it was not simple and obvious, but the solution of the problem by the patentees in the patent in suit represented invention.

The patent in suit as to the claim in suit is valid.

This brings us to the question of infringement.

In the defendant's device a common actuator is employed for the carrier and for the door opening tube. This actuator is a pin having a finger piece for convenient actuation. The pin moves along an inclined slot in the outer case. It is connected to the carrier for the lipstick which is slidable longitudinally for a variable travel. The operating mechanism for imparting variable travel to the slidable carrier is wholly independent of the door opening mechanism, except there is a common actuator for both.

Within the case is disposed a door opening tube. The case and tube are square. They obviously might be circular. In the tube is an extended inclined slot. Viewed in the side wall of a square case it is described as inclined. Viewed in a circular tube it would be described as helical. The slot has a horizontal portion. So long as the actuator pin extends through the horizontal portion of the slot in the door opening tube, just so long will the actuator be engaged operatively with the tube to slide it longitudinally in one direction or another. So long as the actuator pin extends through the inclined portion of the slot, just so long will the door

**6**

opening tube "dwell," while the actuator is free to move the carrier. There is no functional or physical connection between the carrier and the door opening tube. There is, however, a common actuator, so related to them that they are both caused to move concomitantly upon the initial movement of the actuator; after predetermined movement of the door opening tube it is caused to dwell, but the carrier is moved on by the actuator to a variable distance; and upon retraction the door opening tube is "picked up" by the actuator at the proper predetermined point in the carrier's travel, and an operating connection again thus re-established between the actuator and tube to move the latter into the case while the doors are closed.

There is no difference between that device and the one disclosed by the patent, aside from the physical form. The change in form is no less an appropriation of the invention as the same results are obtained in the same way. There is not a single characteristic of the patented device that is not found in the infringing device. There is not a single functional or physical interrelationship as between the common actuator, carrier, and door opener of the patent that has been changed or modified, or discarded in the alleged infringing structure. And the very good reason why there has been no such change is because any change would render the device inoperative or impractical or unmarketable.

The only claim in suit reads as follows:

"3. A container having a cover, a cover opener, a carrier for material, an actuator to move the carrier to and from the cover and means engaging the actuator to the cover opener for operating the same at the initial movement of the carrier to the cover and the end movement of the carrier from the cover."

The claim calls for five distinct elements and requires those elements to have the exact physical and functional relationships to assure practical and successful accomplishment of the object of the inventors.

The defendant has every element recited and the exact physical and fundamental relationship specified.

In the patent in suit, a meritorious invention is disclosed.

█ The novelty of the combination recited is to be determined by interpretating claim 3 in the light of the disclosure of the specification and drawings.

Defendant asks that the words of the claim be read literally without relation to the essential novelty in this particular art, and that at least one of the elements, namely, the carrier, be twice used to satisfy the language. Such an interpretation would not give effect to the essential novelty of the combination disclosed.

Defendant contends that the defendant's device should not be regarded as an equivalent of the patented device as it is different in result and function by being a more convenient type of automatic container capable of being operated by one hand instead of requiring two hands as does the device of plaintiff and also that defendant has another type mechanism for creating such a dwell.

These contentions are not sustained.

A comparison of the parts shown in the patent in suit with the parts shown in the print Exhibit P, which illustrates the device complained of, shows close identity in physical form and that they are identical as to result and function. The only physical difference between the two structures considered as a whole is that the patent shows a rotary actuator while the defendant's device employs a sliding actuator, but is really no different as these two types of actuators were used interchangeably prior to the making of the invention and the selection of one or the other was within the skill of the mechanic.

The patent in suit as to the claim in suit is infringed.

A decree may be entered in favor of the plaintiff with injunction and costs.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion for the assistance of the court as provided by Equity Rule 70½ (28 U.S. C.A. following section 723) and rule 11 of the Equity Rules of this court.